| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br><br>1437 Bannock St.<br>Room 256<br>Denver, CO 80202<br>720-865-8301 | DATE FILED: April 26, 2019 11:12 AM<br>FILING ID: B652E4152A353<br>CASE NUMBER: 2019CV31611 |
| **CHRISTINA LOMAQUAHU, M.D.**<br><br>*Plaintiff,*<br><br>vs.<br><br>**UNUM LIFE INSURANCE COMPANY OF AMERICA,**<br><br>*Defendant.* | ▲ COURT USE ONLY ▲<br><br>Case Number: 2<br>Div. |
| *Attorneys for Plaintiff:*<br>Shawn E. McDermott, #21965<br>MCDERMOTT LAW, LLC<br>4600 S. Ulster Street, Suite 800<br>Denver, CO 80237<br>(303) 964-1800<br>(303) 964-1900 (Fax)<br>*shawn@mcdermottlaw.net* | |
| **COMPLAINT AND JURY DEMAND** | |

The Plaintiff, Christina Lomaquahu, M.D. by and through her counsel of record, McDermott Law, LLC, for her Complaint against Defendant Unum Life Insurance Company of America, states, alleges, and avers as follows:

## I.    PARTIES, JURISDICTION, VENUE

### *Plaintiff Christina Lomaquahu, M.D.*

1.    Plaintiff, Christina Lomaquahu, M.D. ("Plaintiff" or "Dr. Lomaquahu"), at all times pertinent hereto, was and is a resident of the county of Denver, State of Colorado.

2.    Dr. Lomaquahu resides at 2531 S. Ivanhoe Place, Denver, Colorado 80222 in Denver County, Colorado.

*Defendant Unum Life*

3.      Unum Life Insurance Company of America (hereinafter referred to as "Defendant" or "Unum") is a Maine corporation, with its principal place of business in Portland, Maine.

4.      Unum is an insurance company registered with the Colorado Division of Insurance and conducts the business of insurance in the State of Colorado.

5.      Unum's principal place of business is 2211 Congress Street, Portland, ME 04122.

*The Disability Insurance Policy*

6.      Unum issued a private Disability Income Policy (Policy No. LAD172212) to Dr. Lomaquahu in the State of Colorado on November 1, 1991.  Unum subsequently issued additional coverage amounts under the Policy (or pursuant to separate policies providing identical coverage) (hereinafter referred to generally as "the Policy").

7.      The Policy premiums were paid by Dr. Lomaquahu in the State of Colorado.

8.      The benefit checks issued under Dr. Lomaquahu's Policy were paid by Unum to Dr. Lomaquahu in the State of Colorado.

*Venue*

9.      The breach of contract and tortious conduct alleged in this action occurred in the State of Colorado.

10.      As a result of Defendants' breach and tortious conduct, Dr. Lomaquahu incurred damages in the State of Colorado.

11.      Venue is proper in Denver County District Court.

## II.      GENERAL ALLEGATIONS

### A.      <u>The Disability Income Policy at Issue</u>

12.      Under the Policy, Unum promised to pay disability income replacement benefits to Dr. Lomaquahu so long as she satisfied the Policy's definition of "Disability" (including either Total Disability or Residual Disability)."

13.      The Policy defines Total Disability as follows:

> **Total disability** or **totally disabled** means that:

1.  injury or sickness restricts your ability to perform the material and substantial duties of your regular occupation to an extent that prevents you from engaging in your regular occupation.

2.  you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness. We will waive this requirement when continued care would be of no benefit to you.

14.     Dr. Lomaquahu's policy defines Regular Occupation as follows:

**Regular Occupation** means your occupation at the time the Elimination Period begins. If you engage primarily in a professionally recognized specialty at that time, your occupation is that specialty.

15.     Prior to August 1, 2009, Dr. Lomaquahu's full-time occupation was Surgical Oncologist.

16.     The Policy defines Residual Disability as follows:

"**Residual disability** and **residually disabled** during the elimination period mean:

1. injury or sickness does not prevent you from engaging in your regular occupation, BUT does restrict your ability to perform the material and substantial duties of your regular occupation:

        a. for as long a time as you customarily performed them before the injury or sickness; or

        b. as effectively as you customarily performed them before the injury or sickness; and

2.  you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness. We will waive this requirement when continued care would be of no benefit to you.

After the elimination period has been satisfied, *residual disability* and *residually disabled* then means that as a result of the same injury or sickness which caused you to satisfy the elimination period:

        1.  you experience at least a 20% loss of net income in your regular occupation; and

        2.  you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness. We will waive this requirement when continued care would be of no benefit to you."

3

17.    Unum found Dr. Lomaquahu was Residually Disabled in April, July, September, October, November and December of 2016.

18.    After the 90-day Elimination Period was satisfied, Unum paid Residual Disability benefits from September 30, 2016 through December 26, 2016.

19.    Unum also determined that Dr. Lomaquahu did not experience the required loss of income and was therefore not Residually Disabled in March, May, June, or August of 2016, although she worked a reduced schedule during those months.

20.    Unum must ensure that all benefit determinations made under the Policy are reasonable and based on the terms of the Policy and the facts and circumstances of the claim.

21.    Unum, as the insurer, owed its insured, Dr. Lomaquahu, the duties of good faith and fair dealing when handling her claim for benefits under the disability insurance Policy.

**B.    Medical Conditions and Treatment**

22.    Dr. Lomaquahu suffers from limiting symptoms associated with Rheumatoid Arthritis, Peripheral Neuropathy and Sjogren's Syndrome.

23.    Dr. Lomaquahu was originally diagnosed with Rheumatoid Arthritis in approximately 2005 and Peripheral Neuropathy thereafter.

24.    As early as 2007, Dr. Lomaquahu and her treating physician, Walter G. Briney, Rheumatologist, discussed the idea of a reduction in her surgical schedule.

25.    As a result of her worsening condition, and in consultation with her treating physicians, Dr. Lomaquahu was required to limit her occupational duties as a Surgical Oncologist in 2009.

26.    Dr. Lomaquahu eventually reduced her surgical schedule on or about August 1, 2009.

27.    As an accommodation to her, Dr. Lomaquahu's employer agreed to create a new position which would allow her to pursue a reduced surgical schedule in combination with the assignment of various administrative functions.

28.    From August 1, 2009 until November 1, 2016, Dr. Lomaquahu continued to work full time but only part time as a surgeon.

29.    From 2009 through 2016, Dr. Lomaquahu's job duties consisted of approximately 40% clinical work and 60% administrative work.

30.    Her compensation during that time frame was substantially greater from the surgical activity as compared to her administrative duties.

31.     Given the continued progression of her medical issues, Dr. Lomaquahu ceased all surgical activity on October 27, 2016 at which time she transferred all of her time to administrative duties.

## C.     Claims for Benefits

32.     Dr. Lomaquahu notified Unum of her claim for individual disability insurance benefits in November 2016.

33.     Unum assigned file numbers CLA161243, CLA161247 and CLA161248 to Dr. Lomaquahu's claim for disability income benefits under the Policy and commenced its investigation of her claim.

34.     On April 26, 2017, Unum issued a claim denial letter stating it could not approve Dr. Lomaquahu's claim for Total Disability benefits.

35.     In rendering this claim decision, Unum concluded that Dr. Lomaquahu's occupation consisted of both surgical and administrative duties.

36.     Unum concluded that her supported restrictions and limitations prevented Dr. Lomaquahu from performing the clinical duties of her occupation as of October 2016 but that she would be able to continue performing administrative duties.

37.     Unum's denial letter ultimately concluded that Dr. Lomaquahu's sickness did not prevent her from engaging in her occupation. However, because Unum also concluded that she was "restricted" from performing the material of substantial duties of her occupation as effectively as she customarily performed them before the sickness, her claim was then determined under the Residual Disability provision.

38.     The Unum denial letter further stated that she did meet the definition of Residual Disability from November 1, 2016, to the time of the denial letter, dated April 26, 2017.

39.     Dr. Lomaquahu subsequently provided additional information to Unum clarifying that her actual "occupation" for purposes of determining eligibility for payments under the Policy was Surgical Oncologist, and that she had not been performing the full duties of such occupation since August 2009.

40.     By letter dated October 11, 2017, Unum recognized Dr. Lomaquahu's clarification about her occupation and her claim that she was no longer performing all of the duties of her surgical occupation as of August 1, 2009.

41.     The October 11, 2017 letter verified that, prior to November 2016, Dr. Lomaquahu spent 40% of her time performing clinical (surgical) work and 60% of the time performing administrative duties due to her medical condition.

42.     The April 26, 2017 denial letter was based, in part, on an incorrect conclusion as to the amount clinical versus administrative work Dr. Lomaquahu was performing prior to August 1, 2009.

43.     For purposes of determining whether benefits were payable under the policy, Unum concluded that 54% of her income was derived from administrative work and 46% was derived from clinical work prior to the date her disability started. However, the date of disability Unum was reviewing at that point was November 2016, and not August 2009.

44.     The November 30, 2017 denial letter incorrectly concluded that Dr. Lomaquahu was able to perform the duties of her occupation between August 1, 2009 and November 1, 2016.

45.     By letter dated December 12, 2017, Dr. Lomaquahu submitted the invited "appeal" to Unum attempting to explain to Unum why its denial letter of November 30, 2017 was incorrect.

46.     On January 12, 2018 Unum issued a new decision which concluded that Dr. Lomaquahu was in fact disabled from her own occupation for a period of six months from August 1, 2009 through March 29, 2010 but denied total disability benefits from that date forward.

47.     The January 12, 2018 letter from Unum concluded that "the material of substantial duties of your occupation on August 1, 2009 related to the full-time practice of Surgical Oncology."

48.     The January 12, 2018 letter then reviewed whether Dr. Lomaquahu met the definition of total or residual disability from November 1, 2016 forward.

49.     In determining whether Dr. Lomaquahu was disabled from November 1, 2016 and forward in time, Unum concluded that her "own occupation" at that point consisted of 80% administrative duties and 20% clinical duties. Based upon this conclusion, Unum inappropriately administered her claim under the Residual Disability provision of the policy as of November 1 ,2016.

50.     Unum then concluded that Dr. Lomaquahu was not residually disabled because she did not meet the required loss of income as defined in the policy.

51.     Unum's decision as of January 2018 is similarly incorrect given its failure to properly analyze her claim for benefits based upon her own occupation as a Surgical Oncologist.

52.     Dr. Lomaquahu's claim under the Policy and subsequent internal appeals were supported by substantial medical and other documentation demonstrating her inability to perform the material and substantial duties of her regular occupation as of August 2009.

53.     Unum's denial of all benefits owed under the Policy is and has been in derogation of Plaintiff's contractual rights and the law.

6

54.    Unum's decision to deny terminate Dr. Lomaquahu's benefits under the Policy was influenced by the financial gains to be achieved by not paying Plaintiff her monthly benefits.

55.    Since 2009, Dr. Lomaquahu has been continuously residually or totally disabled under the Policy and remains disabled to this day.

56.    Dr. Lomaquahu is entitled to benefits under the Policy, retroactive to August 1, 2009.

57.    Dr. Lomaquahu is entitled to benefits under the Policy through the end of the Policy period, and such benefits are due and owing through the date of judgment.

### III.    FIRST CLAIM FOR RELIEF
### (Breach of Contract)

58.    Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

59.    The disability income policy issued by Unum constitutes a contract of insurance.

60.    Plaintiff is entitled to disability income benefits as described herein which are due and owing through the date of judgment.

61.    Through the acts and omissions described herein, as well as those yet to be uncovered through discovery, Defendants breached the contract of insurance.

62.    Defendant's breach of the insurance contract has caused Plaintiff to suffer injuries, damages, and losses in amounts to be proven at trial.

### IV.    SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

63.    Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

64.    Defendant owed duties to Plaintiff under the Policy's implied covenant of good faith and fair dealing, wherein Defendants covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the benefits of the insurance contract.

65.    Defendants breached its duties of good faith and fair dealing by its actions, which included, without limitation, the following unreasonable acts:

     a.     Disregarding the Plaintiff's rights or having a reckless disregard that its conduct was unreasonable;

     b.     Requesting redundant, duplicative, unnecessary and irrelevant information and documentation from Plaintiff throughout the processing of the claim;

     c.     Failing to properly investigate Dr. Lomaquahu's claim for benefits;

     d.     Ignoring the opinions of Plaintiff's medical experts concerning Plaintiff's reasonable restrictions and limitations, and inability to perform her occupation;

     e.     Selectively considering only those records and documents that supported its decision to terminate benefits;

     f.     Failing to provide claims procedures, manuals, or other information and thereby depriving Plaintiff of a complete understanding of the claim handling process and policy requirements;

     g.     Failing to render timely decisions on the claim; and

     h.     Failing to pay Plaintiff's claim for disability benefits under the Policy;

     i.     Refusing to pay claims without conducting a reasonable investigation based upon all available information;

     j.     Denying and withholding Dr. Lomaquahu's benefits without a reasonable basis for doing so;

     k.     Placing its interests in not paying benefits ahead of Dr. Lomaquahu's interest in receiving benefits owed under the Policy; and

     l.     Other conduct to be revealed during discovery.

66.     Defendant knew its acts and omissions were unreasonable, or it recklessly disregarded the reasonableness of their acts and omissions.

67.     As a proximate result of Defendant's actions and conduct, Plaintiff has suffered damages and losses in an amount to be proven at trial, including, but not limited to:

     a.     The contract benefits;

     b.     Being forced to incur additional attorneys' fees and costs in the processing of her claim and in litigation;

    c.     Enduring the emotional trauma of being unnecessarily involved in a lawsuit with Defendant;

    d.     The adverse effect on her financial well-being from the termination of benefits; and

    e.     Other losses and damages alleged elsewhere herein.

68.    As a proximate result of the Defendants' actions and conduct, Plaintiff sustained economic losses, including without limitation the loss of the contract benefit.

69.    As a proximate result of the Defendants' actions and conduct, Plaintiff sustained compensable non-economic injuries, including without limitation, inconvenience, emotional stress, impairment of the quality of life, mental suffering, anguish, anxiety, annoyance, humiliation, and loss of the enjoyment of life, in amounts to be proved at trial.

**WHEREFORE**, Plaintiff Christina Lomaquahu, M.D. asks that judgment be entered in her favor and against the Defendant as follows:

1.    Declare that Plaintiff is disabled within the meaning of the disability income Policy and is entitled to the unpaid benefits described elsewhere in this Complaint;

2.    For compensatory economic, noneconomic, and special damages in amounts to be proven at trial;

3.    For interest as provided by law;

4.    For attorneys' fees and other costs of suit, including expert witness fees; and

5.    For such other and further relief as the Court deems just and proper.

### Plaintiff Demands a Trial by Jury

**DATED** this 26th day of April 2019.

MCDERMOTT LAW, LLC

*s/ Shawn E. McDermott*

Shawn E. McDermott, #21965
4600 S. Ulster Street, Suite 800
Denver, CO 80202
(303) 964-1800 (Tel) - (303) 964-1900 (Fax)
*shawn@mcdermottlaw.net*
*Attorneys for Plaintiff*

<u>Plaintiff's Address</u>
2531 S. Ivanhoe Place
Denver, Colorado 80222